UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Willie B. Johnson, | ) | Civil Action No.: 7:08-cv-55-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Michelin North America, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the court are the parties' cross-motions for judgment. The parties

entered into a Joint Stipulation agreeing to certain relevant facts and the applicable standard of

review. The parties also agreed that the court may dispose of this matter based upon cross-

motions for judgment.[1]

## Procedural Overview

Pursuant to the Joint Stipulations agreed to by the parties, Plaintiff has asserted: 1) a

claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); 2) a claim for

breach of fiduciary duty under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3); and 3) a claim for

attorneys' fees and costs under ERISA § 502(g), 29 U.S.C. § 1132(g).

The parties have stipulated to the contents of the administrative record and have agreed

upon the applicability of the plan documents. Additionally, the parties have agreed upon the

applicable standard of review and the substantive issues that this court should resolve.

---

[1]     The Fourth Circuit Court of Appeals has recognized that the parties in an ERISA case may
agree to waive the summary judgment standard and submit their case to the district court on the
merits by way of cross-motions for judgment. *See Bynum v. Cigna Healthcare of North Carolina,
Inc.*, 287 F.3d 305, 311 n. 14 (4th Cir. 2002).

The issues before this court are as follows: 1) whether, viewing the administrative record as a whole, the determination of Plaintiff's claim and administrative appeal in this matter was an abuse of discretion; 2) whether Plaintiff is entitled to assert a breach of fiduciary duty claim under the circumstances of this case; 3) if Plaintiff is so entitled, whether Defendant committed a breach of fiduciary duty, under the circumstances of this case, for which Plaintiff is entitled to a remedy; 4) if Plaintiff prevails on his claims, whether he is entitled to an award of reasonable attorneys' fees and costs; and 5) if Plaintiff does not prevail, whether Defendant is entitled to an award of reasonable attorneys' fees and costs.

## Factual Background

Plaintiff Willie B. Johnson ("Plaintiff") is a participant in the Michelin Retirement Plan ("MRP"), which is a traditional defined benefit plan. This case involves Plaintiff's unsuccessful attempt to enroll in the Michelin Retirement Account Plan ("MRAP"), which is a defined contribution plan that Michelin first established effective January 1, 2004.

Plaintiff ceased active service with the Defendant in December 1999 due to a disability. However, under the terms of the MRP, an employee who ceases active service or employment due to disability may continue to accrue years of service as a participant in the MRP for as long as he continues to be disabled, subject to certain other conditions. In the instant case, although Plaintiff has not actively worked for the Defendant since 1999, he has continued to accrue years of service as a participant in the MRP. Plaintiff claims that because he has continued to accrue years of service as a participant in the MRP, he should be permitted to enroll in the MRAP.

During certain limited periods in 2004 and 2007, eligible employees who were participants in the MRP were offered the option to participate in the MRAP. Participants in the MRAP were eligible to receive their vested interest in the MRAP and/or the MRP by a lump-sum distribution upon termination of employment. In 2007, during the special election period for the MRAP, Plaintiff sought to enroll in the MRAP so that he could withdraw his accrued MRP benefits in a lump-sum distribution. This request was denied on the ground that only active employees were eligible for MRAP enrollment. Plaintiff appealed this determination, contending enrollment was not limited to active employees but includes disabled former employees who continue to accrue benefits in the MRP. Plaintiff's appeal was denied by the Pension and Benefits Appeals Board ("Board"), and this suit followed.

## Relevant Plan Provisions and Other Documents

The parties have stipulated that the court should consider the following Plan provisions and other documents.

A.    1995 MRP

1.    Section Labeled "Disability"

Disability:    If you become disabled, the years you were disabled will count as credited years of service if all of the following are true:
- you completed at least five years of vested service before you became disabled,
- you became disabled before your normal retirement date of age 65,
- you are eligible for and receive Social Security disability benefits, and
- you remain disabled until your retirement date. If you cease to be disabled or you are disqualified for Social Security benefits, you must present yourself for work within 30 days or your period of disability will not count as credited years of service.

*Disabled* means total disability by physical or mental injury or disease. This disability must prevent you from performing duties for the Company. In addition, a physician selected by the Company must determine that your disability will be permanent and continuous during the remainder of your life.

If you retire following a period of disability, your retirement benefit will be calculated in the same way as if you were actively at work until your normal retirement age of 65.

Your credited years of service will be the number of years you worked before you became disabled *plus* the number of years of disability.

Your average final compensation will be based on your average earnings during the last five years before your retirement. However, if your disability lasts long enough to keep you from having earnings during part of your last five full calendar years, your earnings in effect before your disability began will be used in the calculation for that part of the five-year period.

B.    <u>2006 MRP</u>

1.    Article 4.5(B)    Effective January 1, 2006, if a Participant:

    (1)    satisfies the conditions set forth in Section 4.5(A) of the Plan, and

    (2)    is eligible for and receives disability benefits under the Michelin Long-Term Disability Plan, then his Pension shall be calculated according to Section 4.1 of the Plan (or Section 4.2 of the Plan, if applicable). The calculation of this Pension will take into account the period described above in Section 4.5(A) of the Plan and the period he was both:

        (a)    Disabled, and

        (b)    Eligible for and received disability benefits under the Michelin Long-Term Disability Plan on the assumption that (i) his Compensation for such period was equal to his last rate of earnings immediately prior to becoming Disabled and, (ii) he continued to be an Employee during such period.

2.    Article 6.5, Option E, as amended December 18, 2007

    "<u>Option (E) (Benefits Not in Excess of a Specified Dollar Amount).</u>

In addition to the other Options available under this Section 6.5, effective January 1, 1991, if the commuted value of a Participant's regular mode of benefit described in Section 6.1 or 6.2 of the Plan is in excess of Five Thousand Dollars ($5,000) (or, for distributions made prior to January 1, 1998, Thirty-Five Hundred Dollars ($3,500)), but not in excess of Twenty Thousand Dollars ($20,000) (or for distributions made prior to January 1, 2001, Ten Thousand Dollars ($10,000)), such Participant shall have the option to commence receiving the commuted value in such regular mode of benefit as an immediate annuity, or provided he waives the right to such immediate annuity (with spousal consent if he is married), to receive the commuted value in the form of an immediate single lump sum payment. Further, any Participant who commences participation in the Michelin Retirement Account Plan, effective July 1, 2004, or July 1, 2007, or any Participant who becomes a salaried employee after having a wage employee at the Ardmore, Oklahoma facility prior to July 1, 2007, shall have the option (with spousal consent, if he is then married) to receive the commuted value of his vested accrued benefit in the form of an immediate single lump sum payment at the time of his retirement or other separation from employment with all Employers, regardless of the amount of such commuted value. The commuted value of a Participant's regular mode of benefit shall be determined in the same manner described in section 6.4 of the Plan.

A Participant who separates from employment from all Employers prior to the fifty-fifth (55th) anniversary of his birth must elect this Option by written notice to the Board no later than ninety (90) days after such separation from employment. In the absence of such notice such Participant's retirement Pension shall be paid in accordance with Section 6.1 or 6.2 of the Plan or Options (A), (B), (C) or (D) hereof, commencing upon his Retirement Date (except as otherwise provided in Section 5.1 of the Plan). A Participant who separates from employment with all Employers on an Early Retirement Date may elect, in accordance with the rules and conditions provided by the Board, to receive his retirement Pension under this Option commencing on his Early Retirement Date or on the first day of any month thereafter. Any other eligible Participant may elect to receive his retirement Pension under this Option commencing on his applicable Retirement Date in accordance with the general rules governing optional forms of benefit in this Section 6.5."

3.    Article 1.17, definition of "Employee"

"Employee" means a person who is classified by his or her Employer as an employee of an Employer or an Affiliated Company while such person is so classified. Notwithstanding the previous sentence, effective for Plan Years beginning after December 31, 2003, in no event shall a person qualify as a Plan covered "Employee" herein: (i) during any period in which such person is

performing services for an Employer or an Affiliated Company (or both) as an independent contractor, consultant, contract worker or vendor, as classified by such Employer or Affiliated Company for payroll tax purposes; (ii) during any period in which such person is an employee of an Affiliated Company that is not acting as an Employer pursuant to Section 1.18 hereof; (iii) who first becomes an employee of an Employer after December 31, 2003; (iv) who is not an Employee as of December 31, 2003 (other than a person either absent from work on account of a service in the "uniformed services" [within the meaning of Chapter 43, Title 38 of the United States Code] or later held or found to be entitled to retroactive restoration of Plan service covering a period that includes December 31, 2003), but thereafter is re-employed by an Employer; (v) as of the effective date such person commences active participation in the Michelin Retirement Account Plan; (vi) who performs employment or other personal services for Tire Centers, LLC pursuant to an agreement that obligates Tire Centers, LLC to provide employee benefits for such person (or for a class of persons that includes such person); (vii) who is not a Participant in the Plan on December 31, 2003 and was never a Participant in the Plan prior to that date; (viii) who ceases to be represented by a collective bargaining agreement after December 31, 2003 but continues to be classified as an employee of an Employer or an Affiliated Company; or (ix) who is reemployed after December 31, 2003 by an Employer after his Retirement Date.

4.  Article 1.37, definition of "Trust Fund"

"Trust Fund" means all such money or other property which is held by the Trustee, pursuant to the terms of the Trust Agreement.

5.  Article 7.5

Except as provided in the following Paragraphs (A) and (B) and in Section 9.2 of this Plan, the assets of the Plan shall never inure to the benefit of the Employer, and shall be held for the exclusive purposes of providing benefits to Participants and/or their Joint or Contingent Annuitants and Beneficiaries, and for defraying the reasonable expenses of administering the Plan.

(A)  In the cases of an Employer contribution which is made by virtue of a good faith mistake of fact, such contribution shall be returned and refunded to the Employer within one (1) year after the payment of the contribution, to the extent attributable to such mistake of fact.

(B)  All Employer contributions are conditioned upon the current deductibility of such contributions under Section 404 of the Code, or any successor provisions thereto, in the taxable year for which made. To the extent such deduction is disallowed

and resulted from a good faith mistake in determining the deductibility of the deduction, including an advance determination of disallowance pursuant to guidance issued by the Internal Revenue Service, such contributions shall be returned and refunded to the Employer (to the extent disallowed) within one (1) year after the disallowance of the deduction. Any return of excess contributions shall not include any attributable gains, income or earnings, and shall be net of any and all losses and decrements.

C.     <u>2006 MRAP</u>

1.     Article 3.1, Commencement of Participation, as amended December 18, 2007

"3.1 Commencement of Participation. In the case of an Eligible Employee who elects to cease active participation in the Michelin Retirement Plan effective June 30, 2004, such Eligible Employee shall commence participation in the Plan, as a Participant, on July 1, 2004. In the case of an Eligible Employee who elects to cease active participation in the Michelin Retirement Plan effective June 30, 2007, such Eligible Employee shall commence participation in the Plan, as a Participant, on July 1, 2007. Each other Employer shall commence participation in the Plan as of the Entry Date coinciding with or next following the later of the Effective Date or the date he becomes an Eligible Employee."

2.     Article 2.9, definition of "Eligible Employee"

"Eligible Employee" means an Employee who is classified for payroll tax purposes as an employee of an Employer or an Affiliated Employer by such Employer or Affiliated Employer, but only while such person is so classified; however, the term shall exclude all Employees while eligible to accrue benefits under the Michelin Retirement Plan. Notwithstanding the preceding sentence, in no event shall a person qualify as an Eligible Employee herein (i) while such person is performing services for an Employer or an Affiliated Employer (or both) as an independent contractor, consultant, contract worker, vendor or apprentice, as classified by such Employer or such Affiliated Employer; (ii) while such person is an employee of an Affiliated Employer that is not acting as an Employer pursuant to Section 2.11, or (iii) while such person is performing services for Tire Centers LLC pursuant to an agreement which provides that Tire Centers LLC shall provide employee benefits for such person.

3.     Article 2.10, definition of "Employee"

"Employee" means any person classified by the Employer as being in the employ of the Employer or any Affiliated Employer, and shall exclude a leased employee as defined in 414(n) of the Code. However, such term shall not apply to any person while represented by a collective bargaining agent and covered by a collective bargaining

agreement with the Employer, where benefits have been the subject of good faith bargaining, unless such bargaining agreement specifically provides for the inclusion of such person in the Plan. Such term also shall not include a non-resident alien while such alien is performing personal services outside of the United States (whether for an Employer, an Affiliated Employer, or otherwise).

4.    Article 2.26, definition of "Termination of Employment"

"Termination of Employment" means any cessation of employment on account of an Employee's quitting or being discharged by an Employer or Affiliated Employer, or such Employee's death or effective date of retirement, or such Employee's separation from service from the Employer and all Affiliated Employers. In no event shall an Employee be considered to have incurred a Termination of Employment in connection with a transfer within the controlled group of corporations and trades or businesses which includes the Employer, or as a result of any sale or other disposition of a trade or business in which such Employee does not undergo a period of unemployment compensable under relevant local law.

5.    Article 2.27, definition of "Trust"

"Trust" means the fund maintained to provide benefits under the Plan in accordance with the terms and conditions of the Trust Agreement.

6.    Article 4.3, Conditions on Contributions to the Trust

The Trustee shall return to a contributing Employer the amount of any Employer contribution (i) made by mistake of fact, (ii) conditioned on its current deductibility but disallowed as a current federal income tax deduction under Code Section 404, or (iii) if initial qualification of the Plan is denied, but only if the application for initial qualification is made by the time prescribed by law for filing the Employer's tax return for the taxable year in which the Plan is adopted, or such later date as the Secretary of the Treasury may prescribe. However, the Trustee shall not return any Employer contribution otherwise subject to return under this Section more than one year after:

(i)    Such Employer made the contribution under a good faith mistake of fact;

(ii)    The disallowance of the contribution claimed in good faith as a current federal income tax deduction, and then, only to the extent of the disallowance; or

(iii)    The initial qualification of the Plan is denied.

The Trustee shall not increase the amount of the Employer contribution returnable under this Section for any earnings attributable to such contribution, but the Trustee shall decrease any Employer contribution so returnable for any losses attributable to it. The Trustee shall be entitled to require the Employer to furnish it whatever evidence the Trustee deems necessary to enable the Trustee to confirm the amount the Employer has requested be returned is capable of being returned under ERISA.

D.   2006 MRAP Summary Plan Description

1.   Eligibility and Enrollment Section

All employees of Michelin North America, Inc., Michelin Americas Research & Development Corporation, Michelin Aircraft Tire Corporation, LLC, and American Synthetic Rubber Company, LLC (individually, the "Company") who:

- are hired after December 31, 2003, or

- were hired before January 1, 2004 and have elected to participate, are eligible to participate in the MRAP, except for:

- employees covered by a collective bargaining agreement (unless the agreement expressly provides for participation in the MRAP);

- certain employees who are performing services for Tire Centers LLC;

- a nonresident alien employed outside of the United States;

- leased employees;

- employees classified as apprentices; and

- employees who are covered by a retirement program of a related company in another country.

Any eligible employee who is hired by the Company after December 31, 2003, will become a participant in the MRAP as of the date he or she becomes an eligible employee.

An eligible employee who elected to cease active participation in the Michelin Retirement Plan during a Choice Period became a participant in the MRAP effective the date related to their Choice Period.

Once you become eligible, you will need to direct the investment of contributions to your MRAP account and to designate a beneficiary.

During the course of your career, your job status may change. If you transfer to a job classification ineligible for participation or to a Michelin affiliated employer that has not adopted the MRAP, participation in the MRAP would be suspended. In such event, Company contributions to your MRAP account would cease. However, during such a suspension the MRAP account would continue to share in the investment experience of the funds in which they are invested. If your job status were to change once again - back to an eligible job classification - you would resume active participation in the MRAP.

E.     Other Documents

1.     Michelin "Your 2007 Michelin Choice" Brochure, "Who Can Make a Choice"

Employees hired before January 1, 2004 who are currently accruing benefits in the Michelin Retirement Plan (MRP) are eligible to make a choice. This is an important choice that may affect your retirement and financial future.

2.     Michelin "Your 2007 Michelin Choice" Brochure, "Disability Provision"

If you are on long term disability, you may continue to accrue benefits in the MRP.

3.     Michelin "Your 2007 Michelin Choice" Brochure, "How Benefits Are Paid"

Normally, your benefit is paid as a guaranteed lifetime *annuity* (monthly payment). If you elect an option other than a single life annuity, beginning at age 65, your benefit may be reduced. You must choose one of these annuity options at the time you retire:

- •     Single Life Annuity

- •     Joint and Survivor

- •     Ten-Year Certain

- •     Social Security Equalization

Note: You may be able to take your benefit as a lump sum if the value of your benefit is less than $20,000, or if you choose MRAP Now during the 2007 Michelin Choice period. Otherwise, the lump sum is not available to employees in the MRP.

4.     Michelin "Your 2007 Michelin Choice" Brochure, "Lump Sum Payment Option"

If you elect MRAP Now and begin participating in the MRAP on July 1, 2007, you have the opportunity to elect a *lump sum* payment of your accrued MRP benefit when you leave the company. If you elect the lump sum payment option, you must do so within 90 days after leaving the company. Choosing MRAP Now does not mean you will automatically receive your MRP benefit as a lump sum.

If your benefit value is less than $5,000 when you leave or retire from Michelin, you will receive your MRP benefit immediately as a lump sum. If your lump sum benefit value is between $5,000 and $20,000 when you leave or retire from Michelin, you may also choose to receive a lump sum payment.

5.      Michelin "Your 2007 Michelin Choice" Brochure, "Consider This . . ."

Your MRAP Now election is effective only if - you continue to be a Michelin employee through July 1, 2007.

6.      Michelin "Your 2007 Michelin Choice Personal Statement"

If you leave Michelin Before July 1, 2007 - You must remain actively employed by Michelin through July 1, 2007 to be eligible for the MRAP. Any election you make during the choice period is not effective if you leave Michelin before July 1, 2007.

### **Scope of Review**

The Michelin Retirement Plan ("MRP") provides the Plan's Pension and Benefits Appeal Board ("Board") with full and complete discretion to interpret the terms of the MRP and to determine appeals of denied claims thereunder. The Michelin Retirement Account Plan ("MRAP") provides the Michelin Pension and Benefits Board with the same authority regarding claims and appeals under the MRAP. Accordingly, the Parties agree that determination of Plaintiff's claims in this matter will be subject to the abuse of discretion standard of review, as a matter of law. *Metropolitan Life Ins. Co. v. Glenn*, __ U.S. __, 128 S. Ct. 2343 (2008).

Under the abuse of discretion standard, deference should be given to the Plan Administrator's decision. Thus, the decision should not be disturbed if the decision was

reasonable, even if this Court were to disagree with the Plan's determination. *See Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522 (4th Cir. 2000). A plan administrator's decision is considered reasonable "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir.1997) (internal quotations omitted). Under the abuse of discretion standard, the reviewing court must generally determine whether a plan administrator's decision was reasonable based upon the evidence before it. *Booth v. Wal-Mart Stores, Inc. Assocs. Health and Welfare Plan*, 201 F.3d 335, 343 (4th Cir. 2000).

The Parties agree that the effect of any conflict of interest does not change the standard of review, but is simply one of a combination of factors to be considered in the Court's evaluation of the Plan Administrator's determination. *Glenn*, 128 S.Ct. at 2351. Defendant's position is that the existence of any potential conflict of interest is minimal to non-existent because the benefits at issue are maintained in a non-reversionary trust. *See Guthrie v. National Rural Electric Coop. Association Long-Term Disability Plan*, 509 F.3d 644, 650 (4th Cir. 2007) ("trust fund structure removes the inherent incentive to deny claims because the funds do not come from the [employer's] assets"). Plaintiff, on the other hand, contends that as Defendant determines both eligibility and pays benefits on claims, it has a significant conflict of interest, which should be considered by the Court in determining whether there was an abuse of discretion. *See Glenn*, 128 S.Ct. at 2348.

While the court understands Plaintiff's concerns regarding a potential conflict of interest arising from the dual role of determining eligibility and paying benefits, a review of the Plan provisions concerning the imposition of a non-reversionary trust over the Plan funds leads this

court to conclude that any potential conflict of interest arising from the alleged dual role is negligible. Additionally, Plaintiff has submitted no evidence that the alleged conflict of interest was a factor in the denial of Plaintiff's request to enroll in the MRAP.

## Discussion

### I.      Claim for Benefits 29 U.S.C. § 1132(a)(1)(B)

Plaintiff's request for enrollment in the MRAP was denied on the ground that Plaintiff was not an "active employee" as of July 1, 2007. Plaintiff began employment with Michelin on October 27, 1980 and was terminated on December 22, 1999 pursuant to Michelin's policy regarding employees on disability leave or limited duty due to a disability for more than twelve months.

Plaintiff appealed the denial of his request arguing that an individual was eligible to enroll in the MRAP if that individual was currently accruing benefits under the MRP. Plaintiff based his position on language contained in a Michelin Retirement Brochure entitled "Your 2007 Michelin Choice Decision Guide:" The relevant language in the brochure states: *Employees hired before January 1, 2004, who are currently accruing benefits in the Michelin Retirement Plan (MRP) are eligible to make a choice.* According to the brochure language, Plaintiff reasoned that he should be eligible to enroll in the MRAP because, although disabled, he was still accruing benefits in the MRP.

However, a review of the entire administrative record does not support the conclusion that the Plan Administrator abused his discretion in determining that the Plaintiff was ineligible for enrollment in the MRAP simply because he was accruing benefits under the MRP. The 2007 Michelin Choice Decision Guide upon which Plaintiff relies also contains language

13

stating that "[y]our MRAP Now election is effective only if - you continue to be a Michelin employee through July 1, 2007."  Another Michelin document the parties requested that this court consider, entitled "Your 2007 Michelin Choice Personal Statement," provides "[i]f you leave Michelin Before July 1, 2007 - You must remain actively employed by Michelin through July 1, 2007 to be eligible for the MRAP.  Any election you make during the choice period is not effective if you leave Michelin before July 1, 2007."

Participation in the MRAP is controlled by Article 3.1 of the MRAP, and is limited to "eligible employees."  Article 2.9 of the MRAP defines "Eligible Employee" as "an **Employee who is classified for payroll tax purposes as an employee of an Employer** or an Affiliated Employer by such Employer or Affiliated Employer, **but only while such person is so classified**."  "Employee" is defined as "any person classified by the Employer as being in the employ of the Employer or any Affiliated Employer."  The MRAP defines "Termination from Employment," in relevant part, as "**any cessation of employment** on account of an Employee's quitting **or being discharged** by an Employer or Affiliated Employer, or such Employee's death or effective date of retirement, or such Employee's **separation from service from the Employer** and all Affiliated Employers."

The Board determined Plaintiff "**terminated from the company** due to a disability on 12-22-99."  The Board thereafter unanimously approved the motion "to deny the appeal since [Plaintiff] is not considered an active employee, even though it appears that he may continue to accrue years of service for pension purposes."  The Board's conclusion that Plaintiff must be an "active" employee to elect participation in the MRAP is plainly consistent with the definitions of "Eligible Employee," "Employee," and "Termination of Employment."

14

Terms of an ERISA plan are to be interpreted "under ordinary principles of contract law, enforcing the plan's plain language in its ordinary sense." *Wheeler v. Dynamic Engineering, Inc.*, 62 F.3d 634, 638 (4th Cir. 1995). Giving the above-cited plan provisions their plain and ordinary meaning, an employee who has been "terminated" is no longer an "eligible employee" for purposes of enrollment in the MRAP.

Plaintiff separated from service from Michelin in December 1999 and has not been in the "employ" or "service" of Michelin since that time. It is not an unreasonable interpretation of the Plan's terms to conclude that Plaintiff's continued accrual of years of service under the MRP does not equate with being in the "employ" of Michelin, nor does it cause him to be classified as an employee for payroll tax purposes. Because only eligible employee's can make an election to enroll in the MRAP, and Plaintiff, having separated from service in 1999, does not meet the definition of eligible employee, the Plan Administrator's decision to deny Plaintiff's request to enroll in the MRAP was not unreasonable. The court finds that the Plan Administrator's decision to deny Plaintiff's request and the Board's action affirming that decision was not an abuse of discretion and was based on a reasonable interpretation of Plan terms. Plaintiff's claim for benefits due under 29 U.S.C. § 1132(a)(1)(B) is therefore denied.

## II.    Breach of Fiduciary Duty 29 U.S.C. § 1132(a)(3)

Plaintiff has also brought a breach of fiduciary duty cause of action under § 1132(a)(3) arguing that if the court determines that Plaintiff is not eligible to enroll in the MRAP, then Plaintiff is without a remedy under § 1132(a)(1)(B). Defendant argues that Plaintiff's breach of fiduciary duty claim is due to be dismissed pursuant to the holdings in *Varity Corp. v.*

*Howe*, 516 U.S. 489 (1996), and *Korotynska v. Metropolitan Life Ins. Co.*, 474 F.3d 101 (4th Cir. 2006).

Title 29 U.S.C. § 1132(a)(3) states: "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

In *Varity Corp.*, the Supreme Court recognized that § 1132(a)(3) authorized a lawsuit for breach of fiduciary duty in which individualized equitable relief was sought. 516 U.S. at 515. However, the Supreme Court was careful to note that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case [relief under § 1132(a)(3)] normally would not be 'appropriate.'" *Id*.

Interpreting *Varity Corp.*, the Fourth Circuit held in *Korotynska v. Metropolitan Life Ins. Co.*, that when § 1132(a)(1)(B) affords the plaintiff adequate relief, a cause of action under § 1132(a)(3) is not appropriate. *Korotynska*, 474 F.3d at 107; *see also Edmonds v. Hughes Aircraft Co.*, 145 F.3d 1324, No. 97-1431, 1998 WL 228200, at *10 (4th Cir. May 8, 1998) (noting that the Supreme Court in *Varity Corp.* did not intend to create an additional cause of action for every beneficiary challenging a denial of benefits by his plan's fiduciary); *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) (stating that because plaintiff had adequate relief under § 1132(a)(1), relief through the application of § 1132(a)(3) would be inappropriate). The Fourth Circuit stated that:

> Although the Second Circuit has held that plaintiffs may seek relief simultaneously under § 1132(a)(1)(B) and § 1132(a)(3), the great majority of circuit courts have interpreted *Varity* to hold that a claimant whose injury creates a cause of action under § 1132(a)(1)(B) may not proceed with a claim under § 1132(a)(3). These courts have not allowed claimants to proceed with § 1132(a)(3) claims where relief was <u>potentially available to them</u> under § 1132(a)(1)(B), because, in *Varity*, "[t]he Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies."

*Korotynska*, 474 F.3d at 106-7 (emphasis added) (internal citations omitted). The Fourth Circuit concluded that "[a] plaintiff whose injury consists of a denial of benefits 'has adequate relief available for the alleged improper denial of benefits through his right to sue [the benefit plan] directly under § 1132(a)(1),' and thus 'relief through the application of Section 1132(a)(3) would be inappropriate.'" *Id*. at 107.

First, it appears that Plaintiff's breach of fiduciary duty claim is actually a claim for benefits. Where the resolution of a plaintiff's claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA, the plaintiff's claim is actually a claim for benefits. *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999). The relief Plaintiff ultimately seeks under his breach of fiduciary duty claim is the same as the relief sought under his claim for benefits - enrollment in the MRAP so that Plaintiff can withdraw his accrued benefit in the MRP in a lump sum. Plaintiff's entitlement to such relief turns on the interpretation and application of Plan terms such as "eligible employee," "termination from employment," and "employee," as opposed to an interpretation and application of ERISA's statutory provisions. As such, Plaintiff has an

adequate remedy for the injury alleged through litigation against the Plan directly under §
1132(a)(1)(B).

Because Plaintiff has an adequate remedy under § 1132(a)(1)(B) to address his issues
regarding the denial of his enrollment in the MRAP, his breach of fiduciary duty claim under
§ 1132(a)(3) cannot proceed. *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996); *Korotynska
v. Metropolitan Life Ins. Co.*, 474 F.3d 101, 107 (4th Cir. 2006); *Cherepinsky v. Sears
Roebuck and Co.*, 487 F. Supp. 2d 632, 642 (D.S.C. 2006) (stating that "[b]ecause adequate
relief is available to the Plaintiff under [§ 1132(a)(1)(B)], Plaintiff is not entitled to
individualized relief under section [§ 1132(a)(3)]"); *Hoyle v. Liberty Life Assur. Co. of Boston
Inc.*, 291 F. Supp. 2d 414, 417-18 (W.D.N.C. 2003) (dismissing breach of fiduciary duty claim
under § 1132(a)(3) where plaintiff had adequate remedy under § 1132(a)(1)(B)); *Doss v.
Hartford Life Ins. Co.*, No. 3:05CV386-C, 2005 WL 3864114, at *2 (W.D.N.C. Dec. 21, 2005)
(stating "it is well settled that where a Plaintiff has available to her other adequate relief under
ERISA, such as a claim for benefits under Section [1132(a)(1)(B)], a breach of fiduciary duty
claim brought under Section [1132(a)(3)] is duplicative and must be dismissed"), *adopted by*,
2006 WL 695022 (W.D.N.C. March 12, 2006); *Sawyer v. Potash Corp. of Saskatchewan*, 417
F. Supp. 2d 730, 745 (E.D.N.C. 2006) (stating "a plaintiff may not pursue a claim under §
[1132(a)(3)] related to an alleged wrongful denial of benefits for which she has also sought a
remedy under § [1132(a)(1)(B)]"); *Crummett v. Metropolitan Life Ins. Co.*, No. 06-1450, 2007
WL 2071704, at *3 (D.D.C. July 16, 2007) (dismissing plaintiff's breach of fiduciary duty
claim under § 1132(a)(3) concluding that the plaintiff merely repackaged her benefits claim as
a breach of fiduciary duty claim); *Rice ex rel. Rice v. Humana Ins. Co.*, No. 07 C 1715, 2007

WL 1655285, at *3 (N.D.Ill. June 4, 2007) (dismissing plaintiff's § 1132(a)(3) breach of fiduciary duty claim noting that the relief plaintiff was seeking in his claim under § 1132(a)(3) was also available to him under § 1132(a)(1)(B)).

With regard to Plaintiff's contention that the denial of his claim for benefits or request to enroll in the MRAP would leave him without a remedy, simply because one is unable to prevail on the merits under a § 1132(a)(1)(B) claim does not mean such a claim is not an "adequate remedy." *Cotton v. Massachusetts Mutual Life Ins. Co.*, 402 F.3d 1267, 1276 (11th Cir. 2005) (one who can state a "cognizable claim" under § 1132(a)(1)(B) cannot assert a claim under § 1132(a)(3) because "the availability of an adequate remedy under the law . . . does not mean, nor does it guarantee, an adjudication in one's favor"); *Pearson v. Abbott Labs. Annuity Ret. Plan*, C.A. No. 4:06-cv-3330-RBH, 2007 WL 2688616, at *2 ("[t]he simple fact that the Plaintiff may not prevail on her claim under § 1132(a)(1)(B) does not make her alternative claim under § 1132(a)(3) viable") (citing *Tolson v. Avondale Industries, Inc.*, 141 F.3d 604, 610 (5th Cir. 1998)).

Plaintiff also argues that his breach of fiduciary duty claim is not duplicative of his claim under § 1132(a)(1)(B). Although not pled in his Complaint, Plaintiff now contends that the Defendant breached its fiduciary duties by failing to inform him that separation from the company could result in the future inability to exercise certain rights under the MRP. Plaintiff has not filed a motion to amend his complaint, however, such amendment would be futile as the Plan provision upon which Plaintiff relies was not in existence at time of his separation from Michelin in 1999. There can be no misrepresentation or breach of fiduciary duty

regarding the potential effects of Plan provisions that were not in existence during the relevant time period.

In conclusion, Plaintiff's breach of fiduciary duty claim under § 1132(a)(3) fails because Plaintiff has an adequate remedy to address his alleged injury under § 1132(a)(1)(B). To the extent Plaintiff attempts to raise a new breach of fiduciary duty claim based on a misrepresentation or failure to inform theory, such a claim was not pled in the complaint. The court declines to permit any such amendment at this time as the amendment would be futile, untimely, and prejudicial to the Defendant.

## III. Attorneys' Fees and Costs

Both parties have requested attorneys' fees and costs under 29 U.S.C. § 1132(g). Section 1132(g) states in part that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Neither party has established a sufficient basis for this court to award attorney's fees and costs. The court, therefore, in its discretion denies each party's request.

## Conclusion

For the reasons stated above, Plaintiff's claim for benefits under 29 U.S.C. § 1132(a)(1)(B) is dismissed because the Plan Administrator's decision to deny Plaintiff enrollment in the MRAP was based on a reasonable interpretation of Plan terms. Plaintiff's claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) is dismissed because Plaintiff has an adequate remedy under § 1132(a)(1)(B). Because Plaintiff has not prevailed on either

cause of action, his request for attorneys' fees and costs is denied. Defendant's request for attorneys' fees and costs is also denied.

Plaintiff's [Docket Entry #27] motion for judgment is **DENIED**. Defendant's [Docket Entry #28] motion for judgment is **GRANTED**. This case is hereby **DISMISSED with prejudice**.

**IT IS SO ORDERED**.


Florence, SC                                                    s/ R. Bryan Harwell
September 11, 2009                                              R. Bryan Harwell
                                                               United States District Judge